**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| LONZO J. CLAY, et al., | * | CIVIL ACTION |
| | * | |
| Plaintiffs, | * | NO. 09-7625 |
| | * | |
| VERSUS | * | SECTION "A" |
| | * | JUDGE ZAINEY |
| NORTHROP GRUMMAN, | * | |
| CORPORATION, et al., | * | MAG. DIV. "2" |
| | * | MAG. JUDGE WILKINSON |
| Defendants. | * | |
| | * | |

<u>**PLAINTIFFS' FIRST AMENDED COMPLAINT**</u>

**I.  INTRODUCTION**

1.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), to recover unpaid wages, including overtime, for work they performed on behalf of Defendants Northrop Grumman Corporation, Northrop Grumman Shipbuilding, Inc., Northrop Grumman Ship Systems, Inc., and Northrop Grumman Shipbuilding (collectively "Northrop Grumman" and/or "Defendants" and/or "Company") at its shipbuilding facilities.

2.     Plaintiffs are current and former hourly employees who worked at Defendants' shipbuilding facilities, specifically Avondale, Louisiana facility and Pascagoula, Mississippi facility, as non-exempt employees entitled to minimum wage, regular wage, and overtime pay under the FLSA. Named Plaintiffs allege on behalf of themselves and all similarly-situated persons, that Northrop Grumman has willfully engaged in a pattern and practice of unlawful conduct by failing to record, credit, or compensate Defendants' non-exempt, hourly wage employees, including Named Plaintiffs

1

and potential opt-in plaintiffs, for all of the time the Defendants require or permit such employees to perform work.

3.     Other current and former employees of Defendants are also entitled to receive unpaid wage and/or overtime compensation for the same reasons alleged in this Complaint, namely that Defendants willfully fail to record, credit, or compensate them for all of the time the Defendants require or permit such employees to perform work.

4.     Named Plaintiffs are permitted to maintain this action "for and on behalf of themselves and other employees similarly situated." 29 U.S.C. § 216(b). Any similarly-situated employee wishing to become a party plaintiff to this action must provide "his consent in writing to become such a party," and such consent must be filed with this Court. 29 U.S.C. §216(b).The FLSA requires employees to be paid wages for all time between the beginning and end of a "continuous work day", as that term is defined in applicable U. S. Department of Labor regulations implementing the FLSA, 29 C.F.R. §790.6(a), and in the Supreme Court's decision in *IBP v. Alvarez*, 546 U. S. 21 (2005).

5.     Like the Named Plaintiffs in this action, Defendants' current and former hourly employees' continuous work day begins with the first activity that is integral and indispensable to their principal work (the donning of their core personal protective equipment before the swiping of their time cards, walking and the collection, donning, and carrying of Northrop Grumman's additional protective gear and equipment to their designated work area) rather than when their shift is scheduled to start, and ends with the last activity that is integral and indispensable to their principal work (the doffing of their core personal protective equipment in the manner required by the Company at the end of the work day, after clocking out and exiting the gates to the shipyard) rather than the time their paid time ceases to be recorded. While such time for donning and doffing this core mandated personal

2

protective equipment may be found to be non-compensable under 29 U.S.C. §203(o), the donning and doffing of this core mandated personal protective equipment starts the employees "continuous workday" and therefore, anything between these two events is compensable under the applicable U.S. Department of Labor regulations implementing the FLSA, 29 C.F.R. §790.6(a), and in the Supreme Court's decision in *IBP v. Alvarez*, 546 U. S. 21 (2005). Even if such donning and doffing is found to not start the "continuous workday", each and every employee, similar to the Named Plaintiff, is required to swipe their identification badge upon entering and exiting the gates to the shipyard. This action is mandated, monitored and controlled by Defendants, as well as required by Defendants pursuant to government regulations. If employees donning and doffing of the core mandated personal protective equipment is determined to not start the "continuous workday" under *IBP v. Alvarez*, 546 U. S. 21 (2005), then the employees requirement to swipe their identification badge immediately upon entering and exiting the facility should start the employees "continuous workday" under *IBP v. Alvarez*, 546 U. S. 21 (2005). In either instance, Defendant has failed to compensate Named Plaintiffs, and others similarly situated for all work performed between the first compensable act of the day and the last compensable act of the day as defined in applicable U. S. Department of Labor regulations implementing the FLSA, 29 C.F.R. §790.6(a), and in the Supreme Court's decision in *IBP v. Alvarez*, 546 U. S. 21 (2005).

6.     Like the Named Plaintiffs in this action, other current and former hourly employees seek compensation for all of the time that Defendants permitted or required them to work, excluding the time, if any, found to be non-compensable for donning and doffing of the employees' protective gear under 29 U.S.C. §203(o).

7.     Like the Named Plaintiffs, other current and former hourly employees are required to don

core mandatory personal protective equipment prior to entering the gates of the facility by swiping their personal identification card for security and attendance purposes. Like the Named Plaintiffs, all employees at Northrop Grumman's shipbuilding facilities are required to don, and doff this core required personal protective gear and equipment issued by Northrop Grumman Corp. each and every workday, as Northrop Grumman's policy mandates. This core mandated gear and equipment includes safety glasses with side shields, steel-toe boots, earplugs, and hard hats. Like the Named Plaintiffs, other current and former employees, are required to don this core required equipment and gear before ever entering the gate to the shipyard, thereby triggering the "continuous workday" for employees. Like the Named Plaintiffs, other current and former hourly employees are not compensated from when they don this integral and indispensable core mandated equipment and gear, but rather are only compensated from when their scheduled shift is to begin. Like the Named Plaintiffs, other current and former hourly employees will be disciplined for not donning this standard required personal protective equipment prior to entering the gate to the shipyard. As such, like the Named Plaintiffs, Defendants illegally require employees to perform work which goes unpaid under the "continuous workday" rule as the Supreme Court ruled in *IBP v. Alvarez*, 546 U. S. 21 (2005).

8.     Defendants' practices are in direct violation of the FLSA, 29 U.S.C. § 201 *et seq*. Named Plaintiffs seek injunctive and declaratory relief, compensation, and credit for all unrecorded and uncompensated work required or permitted by Northrop Grumman, liquidated and/or other damages as permitted by applicable law, and attorneys' fees and costs.

9.     This action is brought to recover unpaid hourly and overtime compensation owed to Named Plaintiffs and all current and former employees of Defendant at all of its shipbuilding facilities who are similarly situated to Named Plaintiffs pursuant to the FLSA.

4

## II.    JURISDICTION AND VENUE

10.    The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331and

1337 and Section 16(b) of the FLSA, 29 U.S.C § 216(b).  Northrop Grumman has been regularly

engaged in interstate commerce in this District and has been an employer within the meaning of the

FLSA, 29 U.S.C. §§ 206-207, at all times relevant to this Complaint.

11.    Venue is proper pursuant to 28 U.S.C. 1391(b) and (c) because Northrop Grumman's

principal place of business is located in this judicial district. Northrop Grumman is licensed to do

business and is doing business in Louisiana and may be found in the Eastern District of Louisiana.

## III.    PRELIMINARY FACTS

12.    This action is brought to recover unpaid hourly and overtime compensation owed to Named

Plaintiffs and all current and former employees of Defendants at its shipbuilding facilities who are

similarly situated to Named Plaintiffs pursuant to the FLSA. Named Plaintiffs and the collective

group similarly-situated are or have been employed at Northrop Grumman's shipbuilding facilities

and are required to wear certain personal protective equipment including work gloves, hard hats,

safety glasses with side shields, steel-toe boots, earplugs and tools. Defendants require employees

to don mandatory core personal protective equipment, as identified above, and identified in

Defendants' employee manuals, prior to ever entering the gate to the shipyard. Named Plaintiffs and

others similarly-situated have been paid only for their set shift time and not for their pre-shift time

and post-shift time work.

13.    Northrop Grumman requires employees, including the Named Plaintiffs and others similarly-

situated, to arrive at work well before the beginning of their scheduled shift of work, (1) to don

mandatory core personal protective equipment, they must bring from home, prior to entering the gate

to the shipyard; (2) to punch an individual time card upon their arrival at the facility in order to enter the shipyard; (3) to walk approximately ten (10) minutes and then proceed to collect, don, and carry the Company's additional protective gear and equipment; and (4) to then locate their supervisor for mandatory pre-shift meetings to discuss safety and other work related issues, all for the benefit of Northrop Grumman. Supervisors require employees, including the Named Plaintiffs, to arrive at their workstation at least two (2) minutes before the start of their shift-time compensation or the supervisor will consider them late and reprimand the employee. Like the Named Plaintiffs, all employees similarly-situated are not compensated for any of this work, but are only paid for their shift time as outlined in Defendants' manuals. Such unpaid work is required or permitted for Northrop Grumman's benefit and occurs at the start of each work day, exclusive of any non-compensable time as defined under 29 U.S.C. § 203(o).

14.     Northrop Grumman's method of compensation also does not pay for post-shift time work performed or permitted on its behalf and at its direction after the last horn sounds indicating paid time ceases.  The Named Plaintiffs and others similarly-situated have been required to doff, carry, and store Northrop Grumman's additional protective gear and equipment without compensation after paid time ends. Like the Named Plaintiffs, other current and former employees are required to (1) work till the sounding of the horn/whistle indicating paid time has ceased; (2) then proceed to doff, carry and store Northrop Grumman's additional personal protective gear and equipment; (3) walk approximately ten (10) minutes to exit the facility; and (4) after swiping their card and exiting the gates, employees then doff the core mandated personal protective equipment. Such unpaid work is done for Northrop Grumman's benefit and occurs at the end of each similarly-situated employees' work day, exclusive of any non-compensable time as defined under 29 U.S.C. § 203(o).

6

15.     Northrop Grumman's method of payment also does not pay the Named Plaintiffs and those similarly-situated for work permitted or performed on its behalf and at its direction during the employees one unpaid 30 minute break. All employees similarly-situated to the Named Plaintiffs are to be given one 30 minute unpaid break, as outlined in Defendants' manuals. However, like the Named Plaintiffs, other current and former employees are required to perform work for the benefit of Northrop Grumman during their unpaid meal break. Employees must work up and until the sounding of the horn/whistle indicating their 30 minute unpaid break has begun at that time. Employees are then required to walk to a designated area, and then doff, clean and store Defendants' protective gear and equipment prior to actually going on break. Such work is done during the employees' unpaid break time and for the benefit of Northrop Grumman. Plaintiffs and other employees similarly situated seek compensation for this unpaid time.

16.     During specified times of a ship's building process, employees are allowed to eat on the ship at a designated area on the deck of the ship. During such times, employees are required to work until the horn/whistle indicating their 30 minute unpaid break has begun. Employees then must proceed down or up as much as seven (7) flights of stairs, single-file, with every other employee working on the ship, across the deck of the ship, to the designated break area on the ship, and doff protective gear and equipment before being free for break.

17.     During this time of a ship's building process, near the end of the thirty (30) minute unpaid meal break, Defendants sound a horn five (5) minutes before the meal period is over instructing employees to return to their workstation. However, most if not all employees, like the Named Plaintiffs, must begin donning protective equipment and returning to their workstations well before the five (5) minute horn sounds in order to be back at their workstation at the mandatory time in

7

order to avoid being reprimanded for being late by Defendants' supervisors and management personnel. Such work is done during the employees' unpaid break time for the benefit of Northrop Grumman.

18.     During much of the time of a ship's building process, Navy regulations mandate that employees be completely prohibited from bringing or eating any food on the ship. During such times, employees are required to work until the horn/whistle indicating their 30 minute unpaid break has begun. Employees then must proceed down or up as much as seven (7) flights of stairs, single-file, with every other employee working on the ship, walk across the deck of the ship, then proceed down a single file zig-zag stairway down the ship onto the dock where they are then required to doff protective gear and equipment before being free to eat. Often times employees never have enough time to eat a meal or even go to the cafeteria to get a meal before having to return to the ship due to the time it takes to comply with Defendants' requirements. Such work is done during the employees unpaid break time for the benefit of Northrop Grumman.

19.     During this time of a ship's building process prohibiting food or drinks o n the ship, Defendants sound a horn five (5) minutes before the thirty minute unpaid meal break is over instructing employees to return to their workstation. However, most if not all employees, like the Named Plaintiffs, must begin donning protective equipment and returning to their workstations well before the five (5) minute horn sounds in order to be back at their workstation at the mandatory time in order to avoid being reprimanded for being late by Defendants' supervisors and management personnel. Such work is done during the employees unpaid break time for the benefit of Northrop Grumman.

20.     Like the Named Plaintiffs, other current and former employees of Northrop Grumman are

not provided even 20 minutes for a meal period each day under Defendants illegal pay practices. As such, Plaintiffs and others similarly situated, seek compensation for the entire 30 minute meal break as required under the FLSA. *See* 29 C.F.R. 785.18. Alternatively, if the total unpaid break is not deemed compensable, Plaintiffs allege they are owed compensation for the walk time at the beginning and end of the unpaid breaks, the time spent donning and doffing clothing and equipment pre- and post- break respectively, and any other activities employees perform during this time for the benefit of the Defendants.

21.     Under applicable Department of Labor regulations and the Supreme Court's decision in *IBP v. Alvarez*, 546 U.S. 21 (2005), the FLSA requires Northrop Grumman to pay employees on a "continuous work day" basis beginning with the first activity that is integral and indispensable to their principal work on behalf of the Company and ending with the last such activity each day, less *bona fide* meal breaks.  Like the Named Plaintiffs in this action, others similarly situated's first activity that is integral and indispensable to their principal work on Northrop Grumman's behalf is donning the company mandated core personal protective equipment before ever being allowed to enter the gates to the shipyard where they then are required to swipe in to access the facilities and walk approximately ten minutes to then collect, don, and carry the Company's additional protective gear and equipment to their workstation each work day, and their last such activity is doffing the company mandated core personal protective equipment after swiping out to exit the gates to the shipyard at the end of each such day. While 203(o) may exclude the donning and doffing of the mandatory personal protective equipment, these actions trigger the continuous workday for all activities performed between these two events each such day.

22.     The Plaintiffs pre-shift time and post-shift time work is integral and indispensable to their

9

principal work activity on behalf of Northrop Grumman because: (a) it is required by the Company and by federal regulations with which Northrop Grumman is required to comply in order to operate its shipbuilding facility; and (b) the Plaintiffs cannot safely or effectively perform their work without performing such pre and post-shift time work; and (c) Defendants hired security personnel will not allow the Named Plaintiffs and others similarly situated to even enter the shipyard without having donned this core mandated personal protective equipment. Northrop Grumman does not permit the Plaintiffs to enter or work in the shipyard without such protective gear and equipment because the tasks performed in the shipyard, and the overall work environment, are too dangerous without such protection.  Shipbuilding is labor-intensive, grueling, and often dangerous work.  Regardless of the section of the ship on which they work, the Named Plaintiffs and other employees subject to Northrop Grumman's method of pay must keep pace with a fast-moving  work environment while they use welding equipment, tools or their hands to perform their assigned tasks. Northrop Grumman's operations, general facility conditions, and wage practices are similar, if not identical, throughout all its shipbuilding facilities.

23.     Northrop Grumman's practice of requiring or permitting its hourly non-exempt employees to work off-the-clock is in violation of the FLSA because such employees perform work for the benefit of Northrop Grumman which is uncompensated at their regular hourly wage. To the extent that such work is performed during a workweek in which the affected employees have, or would have, worked in excess of forty (40) hours per week, such practice further violates the overtime pay provisions of the FLSA by virtue of Defendants' failure to pay compensation at a rate of one and one-half (1 ½) times the employees' regular hourly wage rate.

24.     Northrop Grumman uniformly deny hourly wages and overtime premium pay to its

employees, by requiring them to perform "off the clock" work.  Northrop Grumman's deliberate

failure to pay employees earned wages and overtime compensation violates federal law as set out in

the Fair Labor Standards Act. Plaintiffs perform multiple tasks, but are all victims to the same illegal

policy and practice of failing to pay workers for all time worked, including unpaid, but compensable

break periods, unpaid hourly wage times and unpaid overtime premium wage times.

25.     The time for which Plaintiffs and other similarly situated employees are paid is significantly

less than the time they spend working between the time they begin their integral, essential and

indispensable work duties and the time they end their integral, essential and indispensable work

duties. The work time for which Plaintiffs are not paid include, but are not limited to:  (1) swiping

of their identification badge upon entering the gates to the shipyard after they have already been

required to don core mandated personal protective equipment (2) walking a considerable distance

to gather additional protective equipment and tools necessary to perform their work (3) donning such

additional equipment and tools; (4) walking to and meeting with their supervisors prior to their paid

shift time; (5) doffing and donning of personal protective equipment and walking during their unpaid

break; (6) being required to walk and don personal protective equipment prior to the completion of

their unpaid break; (7) walking a considerable distance after the end of their paid time; (8) doffing

and storing their additional protective equipment and tools necessary to perform their work; and (9)

walking considerable distances from the storage area to the exit gate where they swipe their

identification badge; (10) and swiping their badge before proceeding to doff Northrop Grumman's

core mandated personal protective equipment.

### IV.     PARTIES

26.     Named Plaintiff, Lonzo J. Clay, is a current employee of Northrop Grumman at Defendants'

Avondale facility in Avondale, Louisiana.

27.    Named Plaintiff, Lonzo J. Clay, is a resident of Metairie, Louisiana. At all relevant times, Named Plaintiff was an employee of Northrop Grumman within the meaning of the FLSA.

28.    Named Plaintiff, Lonzo J. Clay, has provided his written consent to participate in this litigation, and this written consent is filed in addition to this Complaint.

29.    Named Plaintiff, Jean L. Guerrier, is a current employee of Northrop Grumman at Defendants' Avondale facility in Avondale, Louisiana.

30.    Named Plaintiff, Jean L. Guerrier, is a resident of Harvey, Louisiana. At all relevant times, Named Plaintiff was an employee of Northrop Grumman within the meaning of the FLSA.

31.    Named Plaintiff, Jean L. Guerrier, has provided her written consent to participate in this litigation, and this written consent is filed in addition to this Complaint.

32.    Named Plaintiff, Randy James, is a current employee of Northrop Grumman at Defendants' Avondale facility in Avondale, Louisiana. Plaintiff has also worked at Northrop Grumman's Pascagoula, Mississippi facility.

33.    Named Plaintiff, Randy James, is a resident of Harvey, Louisiana. At all relevant times, Named Plaintiff was an employee of Northrop Grumman within the meaning of the FLSA.

34.    Named Plaintiff, Randy James, has provided his written consent to participate in this litigation, and this written consent is filed in addition to this Complaint.

35.    Named Plaintiff, Kasandra Paul, is a former employee of Northrop Grumman at Defendants' Avondale facility in Avondale, Louisiana. Plaintiff is currently commuting from her home in New Orleans, Louisiana to work at Northrop Grumman's Pascagoula, Mississippi facility.

36.    Named Plaintiff, Kasandra Paul, is a resident of New Orleans, Louisiana. At all relevant

times, Named Plaintiff was an employee of Northrop Grumman within the meaning of the FLSA.

37.     Named Plaintiff, Kasandra Paul, has provided her written consent to participate in this litigation, and this written consent is filed in addition to this Complaint.

38.     Defendants, Northrop Grumman Corporation, Northrop Grumman Shipbuilding, Inc., Northrop Grumman Shipbuilding, and Northrop Grumman Ship Systems, Inc.  (collectively "Northrop Grumman" and/or "Defendants" and/or "Company") , principal place of business is located in the Eastern District of Louisiana. Northrop Grumman is licensed to do business and is doing business in Louisiana and may be found in the Eastern District of Louisiana.

## V.     CAUSE OF ACTION

39.     Plaintiffs incorporate by reference all preceding paragraphs as if fully restated herein.

40.     Northrop Grumman has willfully violated the FLSA by:

(a)     permitting or requiring each of the Plaintiffs to perform integral and indispensable work activities for the benefit of the Company before and after the regular paid shift time, and during unpaid breaks, without compensation, either at a regular rate or an overtime premium, for all time worked in excess of forty (40) hours in a work week, as required by the FLSA, and without keeping accurate records of the number of such uncompensated hours of work;

(b)     permitting or requiring the Plaintiffs to work overtime in excess of forty (40) hours in a work week without appropriate overtime rates of compensation; and

(c)     permitting or requiring the Plaintiffs to perform work for the benefit of Northrop Grumman during unpaid breaks and, as a result, causing Plaintiffs to

13

receive unpaid rest periods of 20 minutes or less per work day, while still deducting

30 minutes per break period from employees' paid time.

41.     Northrop Grumman's refusal to pay for pre-shift time and post-shift, exclusive of the time, if any, found to be non-compensable under section 203(o) of the FLSA, work permitted or required on its behalf, or to include such work in determining the number of hours beyond forty (40) per week for which overtime compensation is due, is a willful violation of the Fair Labor Standards Act.

42.     Defendants knew or should have known that its supervisory and management personnel permit or require employees who are paid only by shift time, as described in Defendants' manuals, to perform uncompensated pre-shift time and post-shift time work, exclusive of the time, if any, found to be non-compensable under section 203(o) of the FLSA, which is integral and indispensable to its shipbuilding business.  This unlawful conduct by Northrop Grumman has been widespread, repeated and consistent throughout all its shipbuilding facilities.  Despite years of litigation by both private plaintiffs and the Department of Labor against similar manufacturers over the failure to compensate employees for all time worked, from first compensable act to last compensable act, including a ruling by the Supreme Court in November, 2005 in the case of *Alvarez v. IBP, Inc.*, Northrop Grumman persists in its unlawful practices.

43.     For more than 70 years, Northrop Grumman Shipbuilding facilities have produced and developed technologically advanced warships for the surface Navy Fleet, U.S. Coast Guard, U.S. Marine Corps, and foreign and commercial customers.

44.     Northrop Grumman's Gulf Coast facilities employ more than 18,000 employees.

45.     Northrop Grumman Shipbuilding is the largest manufacturing employer in the states of Mississippi and Louisiana.

14

46.     Named Plaintiffs, and others similarly situated are typically expected to work 8 hour shifts with one 30 minute unpaid break per shift. Most employees do not have the time to leave the ship and use the break for their own personal time before they are expected to be back at their workstations, or else be subject to discipline should they arrive late to their workstation. Most employees can only sit at their workstations, down inside the ship, or continue to work during their unpaid 30 minute break. Defendants are aware of this and continue to permit or suffer employees to work on unpaid time, all in violation of the FLSA.

47.     Named Plaintiffs, and others similarly situated are supposed to be given a thirty (30) minute unpaid *bona fide* meal break. However, Plaintiffs only receive 20 minutes or less of this break before they are expected to be back at their workstations ready to work.

48.     Employees' thirty (30) minute unpaid break begins with the sounding of the horn/whistle. Employees are then expected to walk considerable distances, doff equipment, walk down or up as much as seven (7) flights of stairs, single-file, with every other employee working on the ship, across the deck of the ship to a designated lunch area (or during most of the ship's building process, they are required to then walk off the ship, then walk to the designated area for employees to doff their personal protective equipment, and then doff their equipment) all before they can actually begin their break. The only difference between these two periods of the ship's build process is the length of the walk employees are required to make before reaching their designated break area. Defendants are aware of this and continue to permit or suffer employees to work on unpaid time, all in violation of the FLSA.

49.     Near the end of the thirty (30) minute unpaid meal break, Defendants sound a horn five (5) minutes before the meal period is over instructing employees to start their return to their workstation.

15

However, most if not all employees, like the Named Plaintiffs, must begin donning protective equipment and returning to their workstations (if they even had time to leave their workstation) well before the five (5) minute horn sounds in order to be back at their workstation at the mandatory time in order to avoid being reprimanded for being late by Defendants' supervisors and management personnel. Defendants are aware of this and continue to permit or suffer employees to work on unpaid time, all in violation of the FLSA.

50.     Despite all the pre-shift and post-shift work employees, like Named Plaintiffs, perform and Defendants require, the employees do not receive compensation for all hours worked, but are merely paid from their shift start time to their shift end time, minus one 30 minute unpaid break. Named Plaintiffs and potential opt-in plaintiffs do not receive credit for, and are not compensated for, any of this unpaid work performed for the benefit of Northrop Grumman. Northrop Grumman does not record, report, or maintain records of such unpaid work performed by Named Plaintiffs and potential opt-in plaintiffs of the Collective Action.

51.     Northrop Grumman knew or should have known that its management personnel permit or require Named Plaintiffs and potential opt-in Plaintiffs to perform work which is for the benefit of Northrop Grumman, and which is integral to Northrop Grumman's shipbuilding business, without appropriate compensation, including all time between employees first compensable act and last compensable act, as described in the Supreme Court's decision in *IBP v. Alvarez*, 546 U.S. 21 (2005).

52.     Northrop Grumman has willfully engaged in a pattern and practice of unlawful conduct by declining to record and pay for all of the time it requires or permits its employees to work in violation of the FLSA. Northrop Grumman's unlawful conduct has been repeated and is consistent.

16

### VI.    COLLECTIVE ACTION CLAIMS

53.    Plaintiffs incorporate by reference all preceding paragraphs as if fully restated herein.

54.    Named Plaintiffs and potential opt-in plaintiffs bring a claim for relief against Defendants for violation of the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of all non-exempt hourly employees of Northrop Grumman's shipbuilding facilities during the period of three years prior to the date of commencement of this action through the date of judgement of this action, and who have not been fully compensated either at their regular rate of pay for time worked off-the-clock, or at one and one-half times the regular rate of pay for all work performed in excess of forty (40) hours per workweek, or both. Named Plaintiffs and potential opt-in plaintiffs are putative members of the collective action on whose behalf all claims alleging violations of the FLSA are brought.

55.    A claim for relief for violations under the FLSA may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) for all claims asserted by Named Plaintiffs because the claims of Named Plaintiffs are similar, if not identical, to the claims of the putative members of the Collective Action.

56.    Potential opt-in members of the Collective Action are similarly-situated to the Named Plaintiffs. They have substantially similar job requirements and pay provisions, and are subject to the same common practice, policy or plan that requires or permits them to perform uncompensated work for the benefit of Northrop Grumman in excess of forty (40) hours per workweek.

57.    Potential opt-in members of the Collective Action are similarly-situated to the Named Plaintiffs. They are all subject to the same common policy, or plan of not being compensated by Northrop Grumman for all hours worked. Named Plaintiffs and potential opt-in plaintiffs work or

have worked at Northrop Grumman's shipbuilding facilities as non-exempt hourly employees.

58.     Named Plaintiffs and potential opt-in plaintiffs of the Collective Action perform or have performed work "off-the-clock" for the benefit of the Company. Neither Named Plaintiffs nor the potential opt-in plaintiffs of the Collective Action have been credited or compensated for their respective "off-the-clock" work performed for the benefit of Northrop Grumman. Named Plaintiffs and potential opt-in plaintiffs have suffered damages, including lost wages and/or lost overtime compensation, resulting from Northrop Grumman's willful and wrongful conduct.

59.     Named Plaintiffs have retained counsel competent and experienced in complex collective actions and FLSA litigation.

60.     Named Plaintiffs bring this action on behalf of themselves and the following proposed Collective Action of all similarly-situated employees: present and former employees of Northrop Grumman's shipbuilding facilities who have held non-exempt hourly positions at any time during all or any part of the period beginning three years before the filing of this Complaint to the present, and who have not been fully compensated for all hours worked, exclusive of the time, if any, deemed non-compensable under section 203(o) of the FLSA.

61.     The claims of Named Plaintiffs are similar to those of the potential opt-in plaintiffs, in that the Named Plaintiffs have been subjected to the same conduct as the potential opt-in plaintiffs of the Collective Action, and the Named Plaintiffs' claims are based on the same legal theory as that of the potential opt-in plaintiffs of the Collective Action.

62.     Named Plaintiffs and potential opt-in plaintiffs bring this action against Northrop Grumman because Northrop Grumman has willfully engaged in a pattern and practice of unlawful conduct by

declining to record and pay for all of the time it requires or permits its employees to work in violation of the FLSA.

63.     The conduct of Northrop Grumman, has been willful, in bad faith, and has caused significant damages to Named Plaintiffs and potential opt-in plaintiffs of the Collective Action.

### VII.   FLSA CLAIMS

64.     Plaintiffs incorporate by reference all preceding paragraphs as if fully restated herein.

65.     For at least the last three (3) years, Northrop Grumman has willfully violated the FLSA by engaging in a pattern or practice, including the following:

        a. Failing to keep accurate records showing all the time it permitted or required Named Plaintiffs and potential opt-in Plaintiffs of the Collective Action to work, which has resulted in the denial of compensation, either at a regular rate or an overtime premium for all time worked in excess of forty (40) hours in a workweek, as required by the FLSA;

        b. permitting or requiring Named Plaintiffs and potential opt-in plaintiffs of the Collective Action to perform integral and indispensable activities before and after the regular paid work shift for the benefit of Northrop Grumman and without compensation, as required by the FLSA and in the Supreme Court's decision in *IBP v. Alvarez*, 546 U. S. 21 (2005).

        c. permitting or requiring Named Plaintiffs and potential opt-in plaintiffs to perform work integral and indispensable during their unpaid meal breaks resulting in Plaintiffs receiving twenty (20) minutes or less for their meal break while being deducted 30 minutes from their paid time, in violation of the FLSA.

66.     The conduct of Northrop Grumman, has been willful, in bad faith, and has caused significant damages to Named Plaintiffs and potential opt-in plaintiffs of the Collective Action.

19

## VIII.   PRAYER FOR RELIEF

Wherefore, Named Plaintiffs, on behalf of themselves and all putative members of the proposed Collective Action, pray for judgment against Northrop Grumman as follows:

A.      Awarding damages, including appropriate compensation for pre-shift time work and post-shift time work, exclusive of time time, if any, deemed non-compensable under section 203(o). Plaintiffs seek compensation for work performed during unpaid breaks, as well as interest, and liquidated or exemplary damages, in amounts to be proven at trial;

B.      Awarding all costs of litigation, including expert's fees, attorneys' fees and expenses;

C.      Awarding such other legal and equitable relief as the Court deems proper; and

## IX.     JURY DEMAND

D.      Plaintiffs demand a trial by jury.

DATED: February 16, 2010.

Respectfully submitted,

/s/ Jacob  A. Kiser
Candis A. McGowan, ASB-9358-036C
Robert L. Wiggins, Jr., ASB-1754-G-63R
Jacob A. Kiser, ASB-5994-c63k
Wiggins, Childs, Quinn & Pantazis, LLC
The Kress Building, 301 19th Street North
Birmingham, Alabama 35203
205/314-0500, 205-254-1500 (Facsimile)


AUB A. WARD (#13228)
Naquin & Ward
8034 Jefferson Highway
Baton Rouge, Louisiana 70809
Telephone (225) 927-1907
Facsimile (225) 927-1399

award@nwlaw.net

Roger K. Doolittle
DOOLITTLE & DOOLITTLE
Attorneys at Law
460 Briarwood Drive, Suite 500
Jackson, Mississippi 39206-3060
(601) 957-9777


**THE PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE TO A JURY**

/s/ Jacob A. Kiser
COUNSEL

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of February, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    Amelia W. Koch, T.A.
    Steven F. Griffith, Jr.
    Brian M. Ballay
    Katie L. Dysart
    Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
    201 St. Charles Avenue
    Suite 3600
    New Orleans, LA 70170

    Paul Brooks Eason
    Scott W. Pedigo
    Baker, Donelson, Bearman,
    Caldwell & Berkowitz, PC
    Meadowbrook Office Park
    4268 I-55 North
    P.O. Box 14167
    Jackson, MS 39236

                                  /s/  Jacob A. Kiser
                                    OF COUNSEL